UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GLYDWAYS, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>GLYD, INC.,<br><br>        Defendant. | Case No. 5:23-cv-00203-EJD<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE LATE OPPOSITION; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; TERMINATING AS MOOT REMAINING MOTIONS**<br><br>Re: Dkt. Nos. 91, 93, 95, 117 |

This is a copyright dispute between Plaintiff and Counter-Defendant Glydways, Inc., ("Glydways") and Defendant and Counter-Plaintiff Glyd, Inc., ("Glyd"). Compl., ECF No. 1; Answer with Counterclaims, ECF No. 8.

There are four motions before the Court: (1) Glydways's motion to strike Glyd's jury demands, ECF No. 91; (2) Glydways's motion to exclude the opinion of Glyd's expert witness, ECF No. 93; (3) Glydways's motion for summary judgment, ECF No. 95; and (4) Glyd's motion for leave to file a late opposition to Glydways's motion for summary judgment, ECF No. 117. All motions except for Glydways's motion for summary judgment are fully briefed. Opp'n to Mot. to Strike, ECF No. 104; Reply ISO Mot. to Strike, ECF No. 108; Opp'n to Mot. to Exclude, ECF No. 103; Reply ISO Mot. to Exclude, ECF No. 107; Opp'n to Mot. for Leave, ECF No. 119.

After carefully reviewing the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons explained below, the Court **DENIES** Glyd's motion for leave; **GRANTS IN PART** and **DENIES IN PART** Glydways's motion for summary judgment; and **TERMINATES** the remaining motions as moot.

## I. BACKGROUND

### A. "GLYDWAYS"

Glydways is a business established in 2016 that creates fully automated mass transit systems comprised of elective, driverless vehicles using dedicated travel lanes to transport passengers to and from fixed stations. Statement of Facts ("Fact") No. 14, ECF No. 96.[1] Glydways markets its system to public entities, including the City of San Jose, Atlanta Airport, and East Contra Costa County.[2] Fact No. 11. To utilize Glydways's system, a public transit agency must invest years and hundreds of millions of dollars to develop infrastructure, including travel lanes and access points. Fact No. 33. This process involves discussions with public officials and agencies; coordination with other professionals in public infrastructure design, financing, and planning; attendance at public meetings; approval by public agencies; and detailed studies. Seeger Decl., ¶ 6, ECF No. 95-1. Glydways is still in the development phase of its business and is currently engaging in work related to design, construction, and financing. *Id.* ¶¶ 2, 12. To date, Glydways has received no revenue from operating its automated transit network and is not operating a system anywhere in the United States. *Id.* ¶ 11.

Glydways uses the following design, which it refers to as the "GLYDWAYS Mark," in its advertisements and website:



---

[1] The Court's citations to the Statement of Facts incorporates the citations therein.
[2] Pursuant to Federal Rule of Evidence 201, the Court grants Glydways's unopposed motion to take judicial notice of these and other facts found in the publicly accessible government documents identified in the Request for Judicial Notice. Req. for J. Notice, ECF No. 97.

Case No.: 5:23-cv-00203-EJD
ORDER DEN. MOT. FOR LEAVE; GRANTING IN PART DEN. IN PART MOT. FOR SUMM. J.; TERMINATING REMAINING MOTS.

2

Seeger Decl., Ex. 2, ECF No. 95-3. Glydways filed an application to register the GLYDWAYS Mark on November 13, 2020, but the United States Patent and Trademark Office ("USPTO") denied the application, citing to the registered GLYD Mark as a conflict. Compl. ¶¶ 13, 14.

It is not certain whether the GLYDWAYS Mark will appear on any completed mass transit system. Seeger Decl. ¶¶ 16–17. Public transit systems sometimes do not display the brand of transit system maker on the operational trains. *Id.* For example, while the public sees "BART" on Bart trains in the Bay Area, the maker of the transit system is called "ALSTROM." *Id.*

### B. "GLYD"

Glyd alleges it is a business that connect travelers with local residents to provide immersive experiences through an app, website, social media, and word of mouth.[3] Answer and Counterclaims ¶ 56. For example, Glyd helps travelers connect with locals who can help them with transportation, tours, and local amenities. *Id.* Glyd alleges that Monika Bhasin began creating the business in 2013 under the name "Glyd," incorporated Glyd on January 14, 2016, and registered the trademark "GLYD" (the "GLYD Mark") with the USPTO on June 26, 2018. *Id.* ¶¶ 57–59.

Glyd uses the GLYD Mark on its website and social media accounts. One such GLYD Mark appears as follows:



---

[3] Given Glyd's failure to file an opposition and present additional evidence, the Court will reference facts deemed admitted by Glyd's failure to respond to Request for Admissions ("RFAs"), facts supported by other evidence in the record, and Glyd's allegations for background purposes.

Case No.: 5:23-cv-00203-EJD
ORDER DEN. MOT. FOR LEAVE; GRANTING IN PART DEN. IN PART MOT. FOR SUMM. J.; TERMINATING REMAINING MOTS.
3

United States District Court
Northern District of California

Seeger Decl., Ex. 3, ECF No. 95-5, at 10.

Glyd alleges that Bhasin has continued to operate the business since May 13, 2013. Answer and Counterclaims ¶ 60. However, given Glyd's failure to respond to Glydways's Request for Admissions ("RFAs"),[4] the following facts are deemed admitted and undisputed: the Glyd App is not available in the United States or on the Apple App store or Google Play app store; the Glyd App is not used anywhere in the United states; and Glyd does not offer goods or services with the GLYD Mark anywhere in the United States. Seeger Decl., Ex. 3, ECF No. 95-5, at 2–9 ("RFA").

### C. Dispute Leading to This Action

In August 2021, Bhasin reports receiving several email inquiries confusing Glyd with Glydways. Seeger Decl. ¶ 11, Ex. 13. That same month, after Glydways's application to register the GLYDWAYS Mark was rejected by the USPTO because of a conflict with the GLYD Mark, Glydways initiated proceedings to cancel the GLYD Mark with the USPTO. Compl. ¶¶ 13, 14; Answer and Counterclaims ¶ 63. In response to the emails and Glydways's proceedings to cancel Glyd's registration, Glyd's counsel sent a cease-and-desist letter to Glydways, demanding their immediate terminate of the use of the GLYD Mark. Answer and Counterclaims ¶ 63. Glydways responded by initiating this action. *Id.*

Glydways now seeks (1) declaratory relief of no trademark infringement and no false designation of origin under the Lanham Act; (2) declaratory relief of no unfair competition under the Lanham Act; and (3) cancellation of Defendant's federal trademark registration for the GLYD Mark based on Defendant's nonuse and/or fraud. Glyd responded with counterclaims for: (1) trademark infringement under the Lanham Act; (2) false designation of origin and unfair competition under the Lanham Act; (3) California common law trademark infringement and unfair competition; (4) unfair and deceptive trade practices under California Unfair Competition Law

---

[4] On July 29, 2025, Magistrate Judge Cousins denied Glyd's motion to be relieved from these deemed admissions. ECF No. 115.

Case No.: 5:23-cv-00203-EJD
ORDER DEN. MOT. FOR LEAVE; GRANTING IN PART DEN. IN PART MOT. FOR SUMM. J.; TERMINATING REMAINING MOTS.

4

1   ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., predicated upon the Lanham Act violations;

2   (5) federal trademark dilution under the Lanham Act; and (6) state trademark dilution and injury to

3   business reputation under Cal. Bus. & Prof. Code § 14247.

## II.     LEGAL STANDARD

Courts may grant summary judgment on a part of a claim or defense only if the moving party shows "there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute when enough evidence exists in the record for a reasonable fact finder to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material when it might affect the outcome of the case. *Id.* When evaluating whether a moving party has satisfied this standard, courts view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

## III.    DISCUSSION

The Court first addresses Glyd's request to file an untimely opposition before moving to the merits of Glydways's summary judgment motion. Given the Court's ultimate grant of Glydways's motion for judgment on all of Glyd's counterclaims, the Court finds the remaining motions moot.

### A.     Motion for Leave to File Late Opposition

Glydways filed its motion for summary judgment on May 30, 2025. The deadline to file an opposition to Glydways's motion was June 13, 2025. Glyd did not file an opposition by that date, and Glydways did not file a reply. On August 21, 2025, approximately twelve weeks after Glydways's motion and ten weeks after the opposition deadline, Glyd filed the present motion for leave to file a late opposition. Glydways opposes Glyd's request.

Under Federal Rule of Civil Procedure 6(b), where the specified period for the performance of an act has elapsed, a district court may extend the time if the party had "failed to

Case No.: 5:23-cv-00203-EJD
ORDER DEN. MOT. FOR LEAVE; GRANTING IN PART DEN. IN PART MOT. FOR SUMM. J.; TERMINATING REMAINING MOTS.

5

act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). To determine whether neglect is excusable, the Ninth Circuit applies the four-part *Pioneer* test, examining: (1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)). Because Congress has not provided guidance to determine what sort of actions constitute excusable neglect, the Court's "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395.

The Court finds Glyd's decision to not file a timely opposition was inexcusable. Glyd's motion fails most notably in the third *Pioneer* element: the reason for the delay. Glyd argues that it did not file an opposition by the June 13 deadline because of "the unresolved status of the deemed admissions and the ethical/procedural bar those admissions imposed." Mot. for Leave 5. Glyd contends that it made the "good-faith choice to resolve this threshold evidentiary issue before submitting opposition papers that would conflict with those admissions." *Id.* Glyd characterizes this choice as "reasonable" and represents that this choice was "communicated to the Court and opposing counsel in advance." *Id.*

There are several issues with Glyd's argument. To begin, Glyd's apparently intentional decision to not file an opposition was not communicated to the Court. Rather than filing, for example, a motion seeking a stay of the briefing schedule pending resolution of the evidentiary issue, or even a notice that it opposed the motion but may seek leave to supplement that opposition after the resolution of the evidentiary issue, Glyd remained silent. Indeed, the only communication with the Court on this topic suggested that Glyd planned to file the opposition on June 13—in its opposition to a different motion filed on June 13, Glyd indicated that its opposition to the present motion for summary judgment would be "concurrently filed." Opp'n to Mot. to

Case No.: 5:23-cv-00203-EJD
ORDER DEN. MOT. FOR LEAVE; GRANTING IN PART DEN. IN PART MOT. FOR SUMM. J.; TERMINATING REMAINING MOTS.

6

Exclude 2 ("As outlined in the concurrently filed Opposition to the Motion for Summary Judgment . . . "). And further, Judge Cousins resolved the underlying discovery dispute on July 7, 2025, but Glyd did not file the present motion seeking leave until August 21, 2025—over six weeks after Judge Cousins' order, and two weeks prior to the scheduling hearing on this motion. Even if the Court were to accept Glyd's justifications for missing its deadline, Glyd has provided no justification for waiting an additional six weeks to seek leave.

The additional *Pioneer* factors also weigh against granting leave. Should the Court allow Glyd to file its opposition nearly ten weeks late, after all briefing deadlines have passed and two weeks before the scheduled hearing, the danger of prejudice to Glydways and the added delay to this case is considerable. And notably, this would not be the first delay caused by Glyd—Glyd previously sought to continue this case so it could conduct discovery, yet failed to complete a single deposition during the extended time. ECF Nos. 44, 58, 106-1, 106-14. The ten-week delay is also considerably lengthy, and allowing additional briefing at this time by both Glyd and Glydways will further lengthen the delay. *See, e.g., Pioneer*, 507 U.S. at 384 (delay of twenty days excused). Finally, there is no evidence to show that Glyd acted in good faith.

For these reasons, the Court **DENIES** Glyd's motion for leave to file an opposition. The Court will proceed with examining Glydways's unopposed motion for summary judgment.

### B. Motion for Summary Judgment

Glydways seeks summary judgment on all its claims and Glyd's counterclaims. Glydways presents three overarching arguments to address all claims: (1) Glydways did not infringe on or falsely designate the origin of the GLYD Mark; (2) Glydways did not dilute the GLYD Mark; and (3) the GLYD Mark should be cancelled based on Glyd's nonuse and/or fraud. The Court will address each in turn.

#### 1. Trademark Infringement and False Designation of Origin

First, Glydways seeks an order declaring that it did not infringe on, or falsely designate, the GLYD Mark under the Lanham Act. Glydways also seeks judgment on Glyd's counterclaims

Case No.: 5:23-cv-00203-EJD
ORDER DEN. MOT. FOR LEAVE; GRANTING IN PART DEN. IN PART MOT. FOR SUMM. J.; TERMINATING REMAINING MOTS.

7

for common law trademark infringement, unfair competition under California state law, and unfair and deceptive trade practices predicated upon the Lanham Act and the California UCL.

All these claims generally share one common core requirement—that the infringer's use of the mark is likely to cause confusion.[5] *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (discussing Lanham Act § 1114); *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (discussing Lanham Act § 1125(a)); *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (finding UCL and FAL claims "substantially congruent" to Lanham Act trademark infringement claims); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992) ("The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products.").

To determine whether a likelihood of consumer confusion exists, courts in the Ninth Circuit rely "on the eight-factor *Sleekcraft* test, which reviews: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003). "The factors are non-exhaustive and applied flexibly; the *Sleekcraft* factors are not intended to be a rote checklist." *Id.* (internal quotation marks and citation omitted).

The Court finds nearly all *Sleekcraft* factors weigh in favor of granting Glydways's motion. First, the GLYD Mark is weak. A mark's strength consists of "two components: the mark's recognition in the market (i.e., its commercial strength) and the mark's inherent

---

[5] Given the Court's finding of a lack of confusion, the Court need not examine arguments regarding the other elements for these claims.

Case No.: 5:23-cv-00203-EJD
ORDER DEN. MOT. FOR LEAVE; GRANTING IN PART DEN. IN PART MOT. FOR SUMM. J.; TERMINATING REMAINING MOTS.

8

1    distinctiveness (i.e., its conceptual strength)." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875

2    F.3d 426, 432 (9th Cir. 2017). There is no evidence that Glyd satisfies either component. As for

3    the GLYD Mark's recognition in the market, Glyd admitted in the RFAs that it does not offer

4    goods or services anywhere in the United States, and it does not market its services in the United

5    States. But even looking beyond the admissions, the only other evidence relevant to this inquiry is

6    Bhasin's testimony that since 2020, Glyd has generated an annual revenue of only a few thousand

7    dollars, with the highest being $7,000 in 2024. Bhasin Dep. 51:17–54:25, ECF No. 95-8. This

8    evidence, even if admissible, does not show commercial strength, and there remains no evidence

9    regarding Glyd's marketing efforts and marketing reach. *See Brookfield Commc'ns, Inc. v.*

10   *W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999) (affirming district court's finding that a

11   mark was weak despite the five-year use of the mark and expenditure of $100,000 in marketing).

12   As for Glyd's conceptual strength, the Court finds no evidence that the distinctiveness of the term

13   "Glyd" is strong enough to overcome the commercial weakness found above. *See Houdini, Inc. v.*

14   *Metrokane Corp.*, No. CV 08-3076 PA (FMOX), 2008 WL 11340383, at *4 (C.D. Cal. Aug.

15   4, 2008) (finding even a strong showing of conceptual strength did not overcome a weak showing

16   of commercial strength).

17         Second, the parties' services are unrelated. If the parties "[do] not compete to any extent

18   whatsoever, the likelihood of confusion would probably be remote." *Brookfield*, 174 F.3d at 1056.

19   The Court finds any likelihood of confusion remote given that the parties do not compete to any

20   extent. Glydways's mass transit system bears no relation to Glyd's "peer-to-peer" marketplace

21   platform.

22         Third, however, the Court cannot say as a matter of law that the marks are dissimilar.

23   Under this factor, "[t]he marks must be considered in their entirety and as they appear in the

24   marketplace." *Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) (citing

25   *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605–06 (9th Cir. 1987) (emphasis added)).

26   "[I]n determining whether marks are similar, courts may look to lettering styles and capitalization,

colors, locations of the mark on the product, prominence, sound and meaning." *Monster Energy Co. v. BeastUp LLC*, 395 F. Supp. 3d 1334, 1354 (E.D. Cal. 2019) (citing *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1128–29 (9th Cir. 2014)). Though not identical, the two marks here both appear at times in all capital white font displayed on a blue background. These similarities could present a question of fact inappropriate for a motion for summary judgment.

Fourth, there is no evidence of actual customer confusion in the United States. Although there is evidence that Glyd received four emails that could be interpreted as customer confusion, the evidence also shows that these emails were sent from persons located in India. Accordingly, even if the emails did show actual customer confusion, they represent a de minimis number of potential customers and are not relevant to consumer confusion *inside* the United States. *See Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 424 (2023) ("When a claim involves both domestic and foreign activity, the question is whether the conduct relevant to the statute's focus occurred in the United States.") (internal quotation marks omitted); *see also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002) ("To constitute trademark infringement, use of a mark must be likely to confuse an *appreciable number* of people as to the source of the product.") (emphasis added); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1053 (C.D. Cal. 2013) (finding "eight examples of potential consumer confusion in the record do not support a finding that any appreciable number of consumers is confused by the two marks").

Fifth, the evidence shows the parties have different marketing channels. Glydways largely uses person-to-person marketing tactics to reach public agencies, whereas Glyd relies largely on its online presence, including social media. *See Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1166 (9th Cir. 2021).

Sixth, purchasers must exhibit a considerable degree of care when accessing either party's services. Glydways's services are marketed to governmental agencies and large scale developers who are subject to stringent regulations regarding infrastructure projects, requiring years and millions of dollars to design and develop infrastructure, conduct studies, and hold public meetings.

Case No.: 5:23-cv-00203-EJD
ORDER DEN. MOT. FOR LEAVE; GRANTING IN PART DEN. IN PART MOT. FOR SUMM. J.; TERMINATING REMAINING MOTS.

Given this high degree of care, a governmental agency would not accidentally choose Glyd to operate a mass transit system. Glyd also requires customers use a high degree of care to access its services. Glyd markets to individuals who generally must download an app, register, and buy or advertise for sale a specific good or service.

Seventh, there is no evidence that Glydways intended to trade on Glyd's goodwill. The evidence shows that Glydways adopted the GLYDWAYS Mark to use in the future without any knowledge of Glyd or its purported use of the GLYD Mark.

Finally, there is no evidence "that either party may expand [its] business to compete with the other . . . " in the same geographic location. *Sleekcraft*, 599 F.2d at 354.

Accordingly, the Court **GRANTS** Glydways's motion for summary judgment on its claims for declaratory relief that it did not infringe on, or falsely designate, the GLYD Mark under the Lanham Act; and judgment on Glyd's counterclaims for common law trademark infringement, unfair competition under California state law, and unfair and deceptive trade practices predicated upon the Lanham Act and the California UCL.

### 2. Trademark Dilution

Next, Glydways seeks judgment on Glyd's counterclaims for federal trademark dilution under the Lanham Act and state trademark dilution and injury to business reputation under Cal. Bus. & Prof. Code § 14247.

Trademark dilution claims under federal and California state law both require the claimant to prove its mark is "famous." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) ("Mattel brought dilution claims under both federal and California state law. The analysis under each is the same."); 15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14247. A "mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A), *accord* Cal. Bus. & Prof. Code § 14247(a). "Dilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing

uses can impinge on their value." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999). As a result, "to meet the famousness element of protection under the dilution statutes, a mark [must] be truly prominent and renowned." *Id.* (internal quotation marks omitted).

Here, the Court finds no evidence of the GLYD Mark being "famous." Glyd is not a household name in par with NIKE or McDonalds; the evidence shows little to no sales; and there is no evidence of actual recognition. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (finding COACH for handbags and leather goods is not a "famous" mark); Bhasin Dep. 102:9–23 (admitting that the GLYD Mark is not a household name and is not as famous as the marks NIKE, MCDONALD'S, COACH, or DELL).

The Court therefore **GRANTS** Glydways's motion for judgment on Glyd's counterclaims for federal trademark dilution under the Lanham Act and state trademark dilution and injury to business reputation under Cal. Bus. & Prof. Code § 14247.

### 3. Cancellation of Registration

Finally, Glydways seeks judgment on its claim for cancellation of the GLYD Mark based on nonuse and/or fraud.

"In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. The Lanham Act authorizes trademark cancellation where a party obtained the marks by fraud. *Id.* §§ 1064(3), 1119; *see MIH Allegro BV v. Fang*, No. LACV1406510JAKASX, 2015 WL 12655399, at *8–9 (C.D. Cal. Jan. 12, 2015). "A party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064(c) by proving a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990).

The Court finds Glydways failed to introduce evidence sufficient to satisfy each element of this claim. Glydways argues that the GLYD Mark was acquired based on fraud because it made a material misrepresentation in a statement submitted to the USPTO. On April 4, 2016, Glyd submitted an application stating under penalty of perjury that it had not yet used the designation "GLYD," by selecting the classification "intent to use" for that application. Fact No. 47. Later, however, Glyd represented under penalty of perjury to the USPTO that it first used "GLYD" in commerce in connection with all services on April 13, 2015. Fact No. 48. Glyd has never produced any evidence that it rendered any services under the "GLYD" designation on April 13, 2015. While these facts could be used to support the first element—establishing that Glyd made a false representation regarding a material fact—they do not satisfy the remaining elements. Glydways has still failed to introduce undisputed material facts to show, as a matter of law, that Glyd knew the representation was false, intended to induce reliance on the misrepresentation, in fact induced reliance, and caused Glydways to incur damages resulting from the reliance.

Therefore, the Court **DENIES** Glydways's motion for judgment on its claim for cancellation of registration.

### C. Motions to Exclude and Strike

The remaining motions pending before the Court are moot. In Glydways's motion to exclude the opinion of Glyd's expert, Michael Malkiewicz, Glydways highlights that the purpose of Malkiewicz's report is twofold: (1) "to evaluate whether there is evidence that [Plaintiff's] anticipated products and services that incorporate marks accused of infringement have caused or likely will cause confusion among an appreciable number of relevant consumers," and (2) "to analyze economic damages and/or monetary relief available to [Defendant] as a result of its allegations against [Plaintiff]." Malkiewicz Expert Report 3, ECF No. 92-3. Given that the Court has dismissed all of Glyd's counterclaims, including its claims for trademark infringement, Malkiewicz's opinion is now irrelevant to this case.[6] Similarly, the Court's dismissal of Glyd's

---

[6] If the parties anticipate that Malkiewicz's testimony will become relevant to the remaining

1  counterclaims moots Glydways's motion to strike Glyd's jury demand. The Court therefore

2  **TERMINATES** Glydways's motion to exclude and motion to strike as moot.

### IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Glyd's motion for leave; **GRANTS IN PART** and **DENIES IN PART** Glydways's motion for summary judgment; and **TERMINATES AS MOOT** Glydways's motions to strike the jury demand and exclude Glyd's expert.

The Court **SETS** a Trial Setting Conference for Thursday, December 4, 2025, at 11:00 a.m. The parties' Joint Trial Setting Conference Statement is due by November 24, 2025.

**IT IS SO ORDERED.**

Dated: October 23, 2025

EDWARD J. DAVILA
United States District Judge

---

cancellation claim at trial, Glydways may re-notice its motion at that time.